IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY, on behalf of herself
and a class of others similarly situated,

     Plaintiff,

                            Civil Action No. _____

v.

WILLIAM PINTAS,
P&M LAW FIRM, LLC,
P&M LAW FIRM (PR), LLC
RELIANCE LITIGATION LLC, and
JAMES RYDER INTERACTIVE LLC

     Defendants.

## COMPLAINT

Diana Mey is a consumer advocate from Wheeling who fights illegal telemarketing by investigating and prosecuting violations of the Telephone Consumer Protection Act. William Pintas is a lawyer who knowingly violates the TCPA in order to generate cases.

It's bad enough that, as an attorney, Pintas relies on illegal telemarketing to fuel his practice. It's worse that, when confronted with his misconduct, Pintas responded by filing a frivolous and fraudulent action in a remote, territorial jurisdiction, in a transparent effort to silence Mey by inflicting emotional and economic pain.

It won't work. For her Complaint, Diana Mey—on behalf of herself and others similarly situated—states as follows:

## Preliminary Statement

1.      Mey brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.

2.      Defendants and their agents, acting as a common enterprise to solicit clients for mass tort cases relating to toxic water exposure at Camp Lejeune, knowingly engaged in a pattern and practice of illegal telemarketing in violation of the TCPA.  In particular, Defendants and their agents violated the TCPA by initiating calls to Mey and other putative class members whose numbers are registered on the National Do Not Call Registry.

3.      Because the calls to Mey were transmitted using technology capable of generating thousands of similar calls per day, Mey brings her claims on behalf of a proposed nationwide class of persons who also received illegal telephone calls from or on behalf of Defendants in violation of the TCPA.

4.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

5.      When Plaintiff made Defendant Pintas and his firm aware of their misconduct and demanded redress, Pintas responded by filing a fraudulent and frivolous lawsuit in the United States Territory of Puerto Rico—a forum entirely unrelated to the events giving rise to Mey's claims. The express purpose of the lawsuit was to coerce Mey into abandoning her advocacy by imposing emotional and economic hardship.

## Parties and Jurisdiction

6.      Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

7.      Defendant P&M Law Firm, LLC ("P&M Law") is an Illinois limited liability company with a principal place of business in Chicago, Illinois.

8.      Defendant William Pintas is an individual residing in Illinois.

9.      In addition to operating P&M Law in Chicago, Pintas founded P&M Law Firm (PR), LLC, in Puerto Rico, for the purpose of avoiding United States income taxes on money earned through his legal practice. Upon information and belief, all acts taken by P&M Law Firm (PR), LLC, in relation to this case were personally directed by Pintas himself.

10.     Defendant Reliance Litigation LLC ("Reliance Litigation") is a California limited liability company with a principal place of business in Encino, California.

11.     Defendant James Ryder Interactive LLC a/k/a James Ryder Interactive Media ("JRIM") is a Florida limited liability company with a principal place of business in Boca Raton, Florida.

12.     At all relevant times, Defendants knowingly solicited West Virginia-based clients and engaged in persistent course of conduct in West Virginia.

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mey's claims arise under federal law.

14.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mey's claims occurred in this district. In particular, the telemarketing calls to Mey occurred in this district.

### Defendants' Illegal Calling

15.     For over two decades, Diana Mey has established herself as a tenacious consumer advocate with a reputation for honesty and integrity. According to a 2019 article in the Wall

Street Journal, Mey's efforts have helped stem the tide of illegal telemarketing by recovering millions of dollars for numerous nationwide classes of aggrieved consumers. Though Mey's efforts are often derided by the billion-dollar telemarketing industry, this Court has commended Mey for "doing exactly what Congress intended —enforcing the law." *Mey v. Venture Data*, LLC, 245 F. Supp. 3d 771, 784 (N.D.W. Va. 2017)

16.     Pintas and P&M Law represent clients in the prosecution of mass toxic tort claims against the United States of America. These mass toxic tort claims commonly allege that the drinking water at Camp Lejeune was contaminated between the 1950s and 1980s, exposing millions of service members and their families to toxic chemicals.

17.     In August 2022, Congress passed the Promise to Address Comprehensive Toxics Act, providing a new private right of action to a class of individuals affected by the tainted water at Camp Lejeune.

18.     In a race to sign up clients, law firms—including P&M Law—have collectively spent millions of dollars on mass tort ad campaigns seeking to represent Camp Lejeune victims. Advertising is the main method to find claimants, and it's handled by an ecosystem of lawyer-specific ad agencies known as lead generators.

19.     Upon information and belief, P&M Law contracted with lead generator Reliance Litigation, who in turn contracted with James Ryder Interactive LLC, to make some or all of the calls at issue in this case.

20.     To increase the reach of their efforts to sign up Camp Lejeune victims, P&M Law and its agents, Reliance Litigation and JRIM, used automated technology to place thousands of illegal calls to potential claimants.

21.     In February 2023, despite having listed her number on the National Do Not Call Registry, Mey began receiving calls from P&M Law, directly or through Reliance Litigation and JRIM, offering legal services in connection with the Camp Lejeune litigation.

22.     Mey's husband Mark, a decorated and honorably discharged Marine Corp veteran received notification from the Department of the Navy in approximately 2020 that he was identified as having been exposed to toxic water at Camp Lejeune from 1977 to 1979.  Mey, who lived with her husband near the base at Camp Lejeune during this period, was particularly offended by the unsolicited marketing calls, not only because she knew they violated the TCPA, but because she was also aware that they violated the American Bar Association's Code of Ethics prohibiting the solicitation of clients. As a result, Mey was determined to identify each law firm responsible for the unlawful calls.

23.      Because of sheer volume of calls she was receiving, Mey eventually began using unique pseudonyms with each new call she received.  That way, when the unique pseudonym resurfaced at a later date, Mey could make a connection between the two calls, helping to identify the source.

24.     On February 8, 2023 at 12:54 p.m., Mey received a call from 915-895-0060 to 304-242-XXXX. When Mey answered the call, she spoke to "Shawn" who began asking a series of scripted questions to determine whether Mey qualified to be a Camp Lejeune claimant. After answering those questions under the pseudonym "Rhonda Nicholson," Shawn represented that Mey would receive a call from "David Smith" from "verification" to complete the application process.

25.     On February 8, 2023 at 1:54 p.m., Mey received a call from 750-458-3885 to 304-242-XXXX. When Mey answered the call, "David Smith" a "senior compensation officer" asked

for Rhonda Nicholson, the pseudonym offered during the preceding call. Mr. Smith again asked Mey a series of scripted prequalification questions. Mr. Smith concluded the call, representing that he needed to finalize the application and would soon call back and transfer Mey to an attorney.

26.     On February 8, 2023 at 2:02 p.m., Mey received a call from 304-426-2107 to 304-242-XXXX. The caller was the same David Smith from the preceding call. Smith attempted to transfer the call to an attorney but suggested that there was a problem connecting with the attorney and would therefore call Mey back shortly to try again.

27.     On February 8, 2023 at 2:10 p.m., Mey received a call from 704-259-4678 to 304-242-XXXX. It was David Smith calling to connect Mey with an attorney. Smith once again attempted to transfer the call but the call disconnected.

28.     On February 8, 2023 at 3:58 p.m., Mey received a call from 704-259-4678 to 304-242-XXXX. It was David Smith again. Smith apologized for disconnecting the prior call and represented that he would instead email Mey.

29.     On February 8, 2023 at 4:09 p.m., Mey received a call from 570-458-3885 to 304-242-XXXX. It was David Smith again, asking if Mey received his email. She had not.

30.     Despite her prior express instruction to Smith not to text her, Mey instead received three separate SMS text messages from 757-263-0071, providing as follows:

    a.     *"Greetings, the following text is regarding your legal claim in regards to the events at Camp Lejeune. Therefore, to continue with this process we first need you to complete your contact information personally. Only a lawyer can properly evaluate a*

*claim, and they can help gather medical records and evidence to build a case. To*

*continue please click here."*

      b.      *"https://lawsuits.legalhelpadvisor.com/cl/"*

      c.      *"Greetings, The following text is regarding your legal claim in regards to*

*the events at Camp Lejeune. Therefore, to continue with this process we first need you to*

*complete your contact information personally. Only a lawyer can properly evaluate a*

*claim,* and they can *help gather medical records and evidence to build a case. To*

*continue please click here. https://lawsuits.legalhelpadvisor.com/cl/"*

31.     The weblink from the preceding text messages was the address that Smith

previously identified as the originating email address.

32.     On February 9, 2023 at 10:14 a.m., Mey received a call from 757-263-0506 to

304-242-XXXX. The caller, "Abigail" with "consumer legal department," asked to speak with

Rhonda Nicholson. Abigail asked Mey to confirm Mey's receipt of the earlier text messages and

emails, but Mey responded that she did not. Abigail then told Mey that she would resend the

email and that Mey would need to complete the form linked in the email in order to complete the

application process.

33.     Following that call, Mey received an email from abigail@legalhelpadvisor.com

with the following message: "*Greetings,  The following text is regarding your legal claim in*

*regards to the events at Camp Lejeune. Therefore, to continue with this process we first need you*

*to complete your contact information personally.  Only a lawyer can properly evaluate a claim,*

*and they can help gather medical records and evidence to build a case.  To continue please click*

*here.  https://lawsuits.legalhelpadvisor.com/cl/.*"

34.     To identify the origins of the preceding calls, Mey completed and submitted the online form using the pseudonym Rhonda Nicholson.

35.     On February 9, 2023 at 12:28 p.m., Mey received a call from 757-263-0506 to 304-242-XXXX. It was Abigail calling again. Abigail asked Mey a few questions before abruptly stating that she needed to call Mey back. The call ended.

36.     On February 9, 2023 at 12:30 p.m., Mey received a call from 757-263-0506 to 304-242-XXXX. It was Abigail, who proceeded to ask the same series of scripted questions as if this was the first time she and Mey had spoken. Abigail represented that someone would call Mey back. Mey asked who the law firm was that would be providing the representation, at which point Abigail responded, "Reliance Litigation of California," which is a lead generator rather than a law firm.

37.     On February 9 and 10, 2023, Mey received seven calls to 304-242-XXXX. Mey did not answer the calls. Some of those calls, however, resulted in voicemails from "Zae" from the "Camp Lejeune Victims Helpline" and "Abigail" from the "Consumer Legal Department."

38.     On February 10, 2023 at 3:13 p.m., Mey received a call from 757-263-0506 to 304-242-XXXX. It was Abigail again, representing that Reliance Litigation had been having trouble reaching Mey.

39.     On February 10, 2023 at 4:07 p.m., Mey received a call from 681-466-0420 to 304-242-XXXX. The caller identified himself as "Daniel" with the "Camp Lejeune Victims Helpline" and "Reliance Litigation" on a recorded line calling for Rhonda Nicholson. Daniel eventually transfers Mey to "Chuck" with "Reliance Litigation." After asking a series of scripted questions, Chuck emailed Mey a representation agreement on behalf of P&M Law and others.

40.     When Mey asked Chuck who was responsible for the earlier calls on February 9, Chucks says "I only know them as JRIM and they are a marketing company so they're looking to talk with folks and once they get ahold of somebody they send them to us. We're Reliance Litigation. We're an intake specialist company. We work directly with the attorney on these cases. The attorneys give us the criteria and then we go through the survey just like you and I just completed and then we go ahead and get you the paperwork over to you and then get the paper work signed and then get it over to the attorney and then they'll follow up with you. You're gonna be working with the attorneys moving forward just so you're aware."

41.     In response, Mey told Chuck she would not sign the documents because she did not request any calls and was merely trying to identify the law firm behind the unsolicited calls. Mey requested that she not be called. Chuck said not a problem and that he'd cancel the documents.

42.     On February 13, 2023 at 10:55 a.m., Mey received a call from 570-458-3885 to 304-242-XXXX. Despite her instruction to stop calling, Mey then received a voicemail from "David," a "senior compensation officer," asking for Rhonda Nicholson.

43.     On February 13, 2023 at 1:11 p.m., Mey received a call from 662-852-2567 to 304-242-XXXX. It was David from the preceding call, asking for Rhonda Nicholson. When Mey asked for the name of his marketing company, David refused. Before the call disconnected Mey again requested that she not be called.

44.     On February 14, 2023 at 5:36 p.m., Mey received a call from 570-458-3885 to 304-242-XXXX. It was David calling again, asking for Rhonda Nicholson. Mey again requested that she not be called.

45.     Mey never consented to be called by or on behalf of Defendants.  Nor did Mey have a prior business relationship with Defendants.

**Pintas's Fraudulent and Abusive Suit Against Mey**

46.     On March 15, 2023, Mey sent a letter to bill@pintas.com and laura@pintas.com — addresses associated with P&M Law's Chicago, IL-headquartered law firm — detailing her claims under federal and West Virginia telemarketing laws and offering a settlement.

47.     On March 16, 2023, Mey was contacted via phone and email by Robby Birnbaum and Chris Meier, attorneys associated with the law firm Greenspoon Marder's offices in Florida.

48.     Between March 16 and April 7, 2023, Mey exchanged numerous emails with Birnbaum and Meier, who offered assurances to Mey that Pintas wanted to settle her claims.

49.     Unbeknownst to Mey, however, Pintas had no intention of settling her claims, but was simultaneously scheming to file a meritless action in Puerto Rico (the "Puerto Rican Action") for the sole purpose of intimidating and coercing Mey into dropping her advocacy.

50.     On April 4, 2023—the same day that Birnbaum emailed Mey about setting up a zoom meeting for April 7 "on getting the claim resolved," William Pintas directed the filing of the Puerto Rican Action in Puerto Rican Territorial Court.

51.     In the Puerto Rican Action, Pintas' Puerto Rican tax dodge, P&M Law (PR), asserts a claim for fraud, accusing Mey of lying and entrapping the firm into violating state and federal telemarketing laws.

52.     The Puerto Rican Action also seeks declarations that none of the calls to Mey violated the TCPA because (a) Mey allegedly consented to be called, (b) Mey established a business relationship with the caller; (c) Mey is not a "residential subscriber" under the TCPA, and (d) there is no cause of action for a telemarketer's failure to honestly identify itself.

53.     The very procedural nature of the Puerto Rican suit exposes its fraudulent and disingenuous purpose.

54.     To begin with, the Puerto Rican Court is utterly lacking in jurisdiction. Because Mey never had any contact with Puerto Rico, the Puerto Rican Action is filled with falsehoods aimed solely at forcing Mey into the hardship and expense of defending herself in a far-flung jurisdiction in which she does not even speak the language.

55.     To manufacture jurisdiction, the Puerto Rican Action points to Mey's settlement demand, which was sent to email addresses at the pintas.com domain. The website to which these addresses correspond, however, belongs to P&M Law Firm, LLC, organized and located in Chicago, Illinois. The website lists a number of U.S. offices—but none in Puerto Rico. Indeed, there is not a single reference to Pintas' Puerto Rican tax shelter. Similarly, Pintas himself is licensed to practice law in Illinois only—not Puerto Rico. In sum, Mey had no contact with Puerto Rico, and no contact with the Puerto Rican Plaintiff, P&M Law (PR), whatsoever.

56.     Pintas and P&M Law (PR) knew their jurisdictional allegations were false.

57.     Pintas & P&M Law (PR) also served the lawsuit on Mey in an underhanded fashion designed to ensure that she could not respond, and to allow Pintas and P&M Law to take a default judgment.

58.     First, Pintas attempted to trick Mey into accepting service. Although both Pintas and Mey are native English speakers, Pintas directed his attorneys to send Mey an email and complaint written entirely in Spanish. Assuming the emails were mere spam, however, Mey deleted them.

59.     Having failed in that—and despite the fact that he was well aware of Mey's residential address—Pintas thereafter petitioned the Puerto Rican Court for permission to serve

the Complaint via publication. A "summons by edict" was subsequently published in something called the "Primera Hora"—a Spanish-language Puerto Rican periodical of which Ms. Mey was never aware and could not have read.

60.     Following service, Pintas quickly obtained entry of default against Mey, who—very much by design—had never had the opportunity to learn of the specific allegations against her, much less offer a defense. Eventually, Mey learned of the default and, after finally obtaining Puerto Rican counsel and a translated copy of Pintas's complaint, was able to have the default lifted.

61.     Most egregiously, the Puerto Rican Action itself is based on numerous allegations that Pintas and his law firm knew were false.

62.     Pintas's chief allegation, that Mey "actively seeks" telemarketing calls, is belied by the fact that Ms. Mey's number has long been listed on the national Do Not Call Registry, and that she never provided any consent to receive calls from Pintas or his affiliates.

63.     Indeed, mocking this Court's holding in *Mey v. Venture Data*, the Puerto Rican complaint, the Puerto Rican Action contends that Mey is "the antithesis of the type of consumer that the Congress of the United States intended to protect."

64.     In support of its contention that Mey entrapped Pintas and his firm, the Puerto Rican Action asserts that Mey provided consent to receive calls by visiting Pintas's website on February 9, 2023. Pintas's own call records and Mey's recordings, however, will conclusively establish that Mey received the first unsolicited calls and communications from Pintas's affiliates on February 8, 2023.

65.     The Puerto Rican Action also alleges that Mey initially requested follow-up calls from Pintas's telemarketers. Once again, however, Mey's recordings of the calls conclusively show that Mey never requested any such call.

66.     The Puerto Rican Action further alleges that the calls from Pintas's telemarketers stopped when requested. That is also false. Mey's records prove that she received numerous additional unsolicited calls after requesting that they cease.

67.     In sum, Pintas—via his Puerto Rican tax dodge—filed a knowingly false complaint accusing Mey of fraud, offered further falsehoods to manufacture jurisdiction in a far-flung tribunal, and improperly and deceitfully served the complaint in order to obtain a default judgment—all for the purpose of harming Mey and coercing her into dropping her efforts to enforce federal law.

68.     Mey has in fact been harmed by Pintas's abusive conduct, incurring tens of thousands of dollars in legal fees and suffering severe emotional distress. As evidenced by this Complaint, however, Pintas's attempt to silence Mey's advocacy on behalf of her fellow consumers has utterly failed.

### Class Allegations
### (TCPA Only)

69.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Mey asserts her TCPA claim on behalf of all other persons or entities similarly situated throughout the United States.

70.     The class of persons Mey proposes to represent include: all residential telephone subscribers within the United States (a) who have registered his or her telephone number on the National Do Not Call Registry and (b) received more than one telephone call within any 12-

month period by or on behalf of Defendants (c) at any time four years before the date this action was commenced through the date of class certification.

71.     Excluded from the classes are Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

72.     The identities of proposed class members are ascertainable through the Defendants' phone records and customer databases.

73.     Upon information and belief, potential class members number in the thousands, at least.  Individual joinder of these persons is impracticable.

74.     Mey is a member of the class and sustained the same injury as those in the putative class.

75.     There are questions of law and fact common to Mey and to the proposed class, including but not limited to:

     a.  Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to residential telephone numbers on the do-not-call registry;

     b.  Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf obtained prior express written consent from the call recipients;

     c.  Whether the violations of the TCPA were negligent, willful, or knowing; and

     d.  Whether Mey and the class members are entitled to statutory damages against Defendants.

76.     Mey's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

77.     Mey will fairly and adequately represent the interests of the class.  She is represented by counsel skilled and experienced in class actions, including TCPA class actions.

78.     The actions of the Defendants are applicable to the class and to Mey.

79.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

80.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

81.     Mey is not aware of any class litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(All Defendants)**

82.     Mey incorporates the allegations from all previous paragraphs as if fully set forth herein.

83.     Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to Mey's residential telephone, which was listed on do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

84.     Mey received more than one telephone call within a 12-month period by or on behalf of Defendants in violation of the TCPA.

85.     Mey did not consent to receive the calls, nor did she have any established business relationship with any of the Defendants.

86.     Defendants' violations were negligent, willful, and knowing.

## COUNT II
### Fraudulent Legal Process, W. Va. Code § 61-5-27a(h)
### (William Pintas and P&M Law (PR))

87.     Mey incorporates the allegations from all previous paragraphs as if set forth herein.

88.     West Virginia Code § 61-5-27a(h) creates a civil cause of action for fraudulent legal process.

89.     Section 61-5-27(b) makes it "unlawful for a person to knowingly engage in a fraudulent official proceeding or legal process."

90.     Section 61-5-27(c) makes it "unlawful for a person to knowingly cause a public official or employee to file, record or deliver a fraudulent claim of indebtedness, common law lien or other lien, financial statement, complaint, summons, judgement, warrant or other legal process, including those issued as the result of a fraudulent official proceeding."

91.     As detailed above, the Puerto Rican Action advances as its central premise several false or materially misstated allegations, including but not limited to its underlying assertion that Mey entrapped Pintas and his affiliates into violating the TCPA, when in fact Pintas knows and knew that Mey received unsolicited calls and communications on Pintas's behalf prior to providing any type of consent, or engaging in any contact with Pintas or his affiliates whatsoever.

92.     William Pintas and P&M Law (PR) violated Section 61-5-27a(h) by directing the filing of the Puerto Rican Action.

93.     Defendants' violation of Section 61-5-27a(h) is the direct and proximate cause of damages to Mey, including attorneys' fees.

## COUNT III
### Abuse of Process
### (William Pintas and P&M Law (PR))

94.     Mey incorporates the allegations from all previous paragraphs as if set forth herein.

95.     Under West Virginia common law, "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Wayne Cnty. Bank v. Hodges*, 175 W. Va. 723, 726, 338 S.E.2d 202, 205 (1985).

96.     Pintas and P&M Law (PR) filed, served, and are pursuing the Puerto Rican Action not for any legitimate purpose, but only to coerce Mey into dropping her valid TCPA claims by causing her economic harm and emotional distress.

97.     Defendants' malicious willful and malicious misuse of process is aimed at Mey in West Virginia, in furtherance of Pintas and his affiliates' violations of the TCPA in West Virginia.

98.     Defendants' malicious abuse of process is the direct and proximate cause of damages to Mey, including attorney fees and emotional distress.

## COUNT IV
### Intentional Infliction of Emotional Distress
### (William Pintas)

99.     Mey incorporates the allegations from all previous paragraphs as if set forth herein.

100.     To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish "(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Brown v. City of Fairmont, W. Virginia*, 221 W. Va. 541, 547, 655 S.E.2d 563, 569 (2007).

101.     By knowingly filing and pursuing the fraudulent Puerto Rican Action, Pintas and his affiliates have engaged in conduct that is atrocious, intolerable, and so extreme that it exceeds the bounds of decency.

102.     Inasmuch as the fraudulent Puerto Rican Action was filed for the sole purpose of coercing Mey into dropping her valid TCPA claims, the defendant acted with intent to inflict emotional distress on Mey.

103.     The actions of Pintas and his affiliates have caused Mey to suffer extreme emotional distress. As a result of the pressure inflicted by Pintas's abusive conduct, Mey has suffered from extreme anxiety and depression, living in fear of personal and financial ruin.

104.     No reasonable person could be expected to endure the stress and hardship of being forced to spend her life savings defending against fraudulent and abusive claims in a far-flung jurisdiction.

**COUNT V**
**Injunctive Relief**
**(Pintas and P&M Law Firm (PR))**

105.    Mey incorporates the allegations from all previous paragraphs as if set forth herein.

106.    A federal court is empowered to enjoin state or territorial court proceedings whenever an injunction is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. Co. v. Broth. of Locomotive Eng'rs.*, 398 U.S. 281, 295 (1970).

107.    Here, the fraud claim and declarations sought in the Puerto Rican Action ask a Puerto Rican territorial court to determine questions of law and fact that are dispositive of Mey's TCPA claims in West Virginia.

108.    Thus, a ruling on the fraud claim or any of the declarations sought in the Puerto Rican Action would seriously impair this Court's flexibility and authority to decide Mey's TCPA claims.

109.    Indeed, given the timing of the Puerto Rican Action—immediately following Mey's email detailing her claims and declaring her intent to file suit in this Court—one can infer that the fraud claim and declarations sought in the Puerto Rican Action are aimed expressly at depriving Mey of her right to have her TCPA claims decided by this Court.

110.    Accordingly, this Court should enjoin any further proceedings in the Puerto Rican Action.

**WHEREFORE**, Mey prays for the following individual and class-wide relief:

A.  Trial by jury;

B.  Judgment against Pintas for compensatory and consequential damages in an amount to be determined at trial, plus court costs and expenses;

C.  Punitive damages and attorneys fees;

D.  Certification of the proposed class;

E.  Appointment of Mey as class representative;

F.  Appointment of undersigned counsel as class counsel;

G.  Judgment permanently enjoining Defendants from engaging in unlawful telemarketing practices;

H.  Judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the TCPA;

I.  Judgment awarding Mey and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing violation;

J.  Judgment holding Defendants jointly and severally liable for the conduct alleged herein;

K.  Judgement enjoining any further proceedings in the Puerto Rican Action;

L.  Pre- and post-judgment interest on all amounts at the maximum allowable rates at law; and

M.  Any other relief to which Mey or the Class may seek or be entitled to under law or equity.

**JURY TRIAL DEMANDED**

**DIANA MEY**

By Counsel:


/s/ Ryan McCune Donovan

Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com